Here ye, here ye, Ms. Honorable Helen Orr for the 2nd Judicial District is now back in session. The Honorable Anne B. Jorgensen presiding. Please be seated. Your Honor, the second case on the docket this morning is 2-33-0059. Annie Lou Cook, plaintiff's accountant. The Montessori School of Lake Forest. Anna Jordahl and Deborah Papala, defendants' appellants. Arguing on behalf of the appellants is Joanne Fosbeth. Arguing on behalf of the appellants is Christy Singer. Are both sides ready to proceed? When you're ready then. May it please the Court, Counsel. Good morning, Your Honors. My name is Joanne Moscovic. I represent the plaintiff appellant in this matter and will be arguing on his behalf this morning. We have four issues that we've appealed to this Court. With the limited time, I would like to concentrate on two of them unless the Court directs me otherwise. The four issues, the first one, in order of how they appear in the brief, is that the trial court limited the topics on which we could question the witnesses when I took depositions in response to the motion to dismiss being filed. And there were three affiants to defendant's motion. So the Court limited the topics that I was allowed to question those witnesses on. The second issue is that the Court denied my motion for leave to file a third amended complaint. The fourth issue, or excuse me, the third issue is that the Court struck on defendant's motion, struck certain portions of plaintiff's affidavits that were attached to our response to the motion to dismiss. And then the fourth issue is that the Court granted the defendant's motion to dismiss. So if I may concentrate on the second and fourth issues, like I said, unless the Court directs me otherwise and has specific questions about the other issues. Was there any effort to subpoena A.B. or his parents? No. Well, no, that's not true. I did try to subpoena. We did actually take the deposition of A.B.'s mother. And then I tried to subpoena the deposition of A.B. who was in a western state, maybe Oregon, I think, at a university. And I was unable to get a response on that subpoena. And with the exception of the trial court's limitation to suit the areas of inquiry for the depositions, was discovery complete? No. When discovery had only been conducted by that point, both sides had answered. And then there was, so there was the original motion to dismiss. There was some, just the written discovery was conducted. There was the second motion to dismiss that was filed. And in that period, there was a first amendment complaint filed and a second amendment complaint filed. So at the time of the motion to dismiss, we were essentially arguing the second amendment complaint. But during that time, during that entire pleading phase from original filing to when defendant's motion to dismiss was granted for the last time, it was only written discovery that was conducted. And then the discovery, the oral discovery that I conducted after coming into the case and trying to depose the affidavits. By the time the trial court ruled that essentially discovery was complete? No, it was not complete. But I would not say it was complete. But I had taken the depositions of the three affidavits for defendant's motion, which were limited in subject matter. And then I had also taken, we had also taken the deposition of Ann Forwicks, who was the mother of the other child. And then the other child being the one in the classroom that there's the issue of whether her son was threatened and had the issues of bringing up the drawings to the teachers. And then we had also taken the deposition of A.B.'s mother. And so those depositions were not limited by the court. It was only just the affidavits to the respondent's motion that the order applied to for the limitations on the subject matter. So had you completed discovery with respect to the school? Issues of, you know, prior notice and supervision? We took the depositions of the three affidavits who were the previous director of the school at the time the incident occurred, the teacher of the classroom at the time the incident occurred, as well as the current director of the school. And the reason we took those three depositions immediately was because those were the three affidavits to the defendant's motion to dismiss. And so to answer your question, might there have been other discovery written, you know, oral depositions that I would have liked to have taken? Well, I mean, certainly in terms of maybe the occurrence, the medical issues and all of that, you know, I'm just kind of setting that aside. You did not ask for an opportunity to take other witnesses as they might relate to notice to the school or the supervisory decisions made by the teacher, et cetera? No. The initial request was to take just the Appian's depositions, but then by agreement with counsel, we squeezed in as many others as we could prior to the hearing on the motion to dismiss, which was the other ones that I have talked about. But if I were given an opportunity to proceed with full discovery- Did you ask for- No. No, I only asked for the Appian's initially. Okay. Your time is limited, so let me ask this question. If we agree with the trial court that there's no genuine issue of material fact as to the defendant's lack of notice of A, B's potential to harm other students, would any of the plaintiff's other claims survive? In other words, the ordinary negligence against a school, claims grounded on the Family Expense Act, would any of those claims survive if we were to agree with the trial court that there was no evidence that the school had notice of A, B's potential harm? I guess I would say that that would not be the only factor specific to actual notice. I think there could be other ways that the school may have had information about this child that were not- and it might amount to constructive notice, but I think actual notice would be what we were talking about in the depositions and ANN-406 and whether there were previous e-mails or not and actual communications about this child. And then I think the other issue- What other- I mean, if the trial court agreed and found- if we agreed with the trial court's finding, what other claim could possibly survive? If you agreed with the trial court's finding, I think I would probably agree that notice would be required because of the types of claims that the plaintiff was making with respect to whether they were disciplinary supervision, failing to warn students, failing to warn parents, moving him to another classroom, giving him therapy, taking some other kind of action to assist this student with any issues he might have had. Right, I don't- I would agree that I think they would have to have notice of any of that. Ms. Forowitz's testimony that she couldn't recall reporting AB as a threat prior to the plaintiff's injury. Right, so her testimony, and I think if you- I'm sure you read the deposition and her affidavit. It's centered on the drawings, the generalities about the teacher's lack of- she didn't like the way the teacher was controlling the classroom. Right, I think the precise point that- Well, so I don't 100% agree with that, and the reason is because in the deposition and the affidavit, there was a question of this email that everybody acknowledges exists the morning after the incident happened. And in that email, she talks about reiterating her concerns. And in her affidavit, she said that the way she uses the English language is to reiterate means that this is not the first time that this has been raised. This is not the first time she's made these concerns and brought those concerns to the attention of the school. And so her- in reading her testimony and her affidavit, you can probably get the sense that she's an extremely concise person. And she never- and she did not want to say something that she did not know 100%. But we're speaking in probabilities that are more likely true than not. Go ahead. I mean, that's a long answer, but- Okay. Go ahead. What else? Yeah, so I think that the issue was that she could not say 100% for sure, but she recalls that she believes she did have these conversations and communications with the school about this child prior to the incident. And, in fact, she was reiterating her concerns in the email the morning after. Her testimony was that she did not recall conveying a concern about AV being a threat prior to the injury. Correct? She may have said that on defendant's counsel's questioning, but then I think it went back and forth during the deposition. And the other thing was that Ann Jordahl and Deborah Pakla both admitted in their depositions that they actually do remember the parent-teacher conference in October, which was two months prior to when the accident happened in December. That they actually do remember a conversation about these drawings that Ann Horowitz brought up as a concern, because, admittedly, they involved a projectile of some sort. And, as you know, the facts in the case are that the student, according to plaintiff, purposefully threw a pencil at the face of plaintiff and injured his eye. And so because there were these projectile drawings that, in fact, were admittedly discussed prior, that would be another, aside from just email communications or perhaps phone communications, those drawings were discussed and admitted. You take issue with the school bringing up AV's privacy. Correct? Right. I mean, I think that... Let me ask you this then. Why is concerns for AV's privacy irrelevant? Well, first of all, AV and his mother or parents are not in the case. They were never named. They're not defendants in the case. Doesn't the school have an obligation to protect AV's rights? Well, so it was raised by a defendant, but I think we have to cite to a specific reason why his privacy would be protected. Let me ask you another question. I want to try to get my questions in. Sure, of course. When you deposed the executive director, Ms. Jordahl, you referred to AV's privacy. That's at page 628 of the common law record, page 12 of the deposition. You referred to AV's privacy. So if you're recognizing AV's privacy interests, why can't the school? I'm recognizing it because they brought it up as a concern. Defendant brought it up as a concern. And that particular issue was never brought up by defendants directly to the trial court, such that the trial court could make a ruling and say, we are going to proceed through this case, but you are never going to disclose the identity of this child. We're going to refer to him as AV. And so out of respect for the process and out of respect for defendant and the child and his parents, I consistently in pleadings, in depositions, we always refer to him as AV. And that was not an acknowledgment on my part that the school needed to protect his privacy. That was a fast, let's get through these depositions, and I'm going to respect that. Are you familiar with the Illinois School Student Records Act? I am, Your Honor, and not intimately. But you know that a school personnel cannot disclose the contents of a school record without a court order under the act, correct? I remember, yes, I have researched that. I cannot tell you that I am familiar with the exact language of that, but I think the issue is that the defendant never raised. In other words, could a school official take the stand and testify about the contents of a record without notifying the parents and getting a court order? I don't know the answer about without notifying the parents, but certainly I think if this case had been given an opportunity to proceed into the courts, I think that at some point, most likely, that issue would have become acute and the court would have made a decision on what can be disclosed. But we had our feet to the fire from the trial court to respond to this motion to dismiss. The plaintiff had appeared on his own to try to get additional time to find an attorney. The court denied that motion. That's not up on appeal, but when I came into this case, our feet were to the fire. So we tried to do as much as we could in a very short amount of time, and the specific issues of the Illinois Constitution, the U.S. Constitution, Illinois Constitution being the search and seizure, and HIPAA were the only things, were the only statutes that were ever raised by the defendant. And rather than trying to litigate that side issue in a hurry, we proceeded through just respecting that we're going to call this child AB. Could you concede that the school code does apply to the school? I do concede that the Illinois school code 2424 applies. Okay. And doesn't the circuit court have the right on its own motion or others' motion to limit discovery to prevent annoyance, expense, embarrassment, unreasonable annoyance, I should say, expense, embarrassment, disadvantage, oppression? So does it really matter if there's a private, you know, a HIPAA interest or whatever you want to call it? The bottom line is the circuit court has discretion to limit discovery. The circuit court has discretion to limit discovery, but first of all, this was not at the place of proceeding with full on discovery. This was at a place that was- Didn't this case, it appended a couple of years, true? It was- I realize you were not on the case the entire time. It was originally- And did anything prevent you from seeking to subpoena the records of the allegedly involved student? Once I was involved, time- Or, you know, was anyone prevented from seeking that? No, I don't think so. You know, the original filing was 5-20-21, and the First Amendment was 12-13-21. Excuse me, 5-20-21 was the original filing. The First Amendment was filed 12-13, so approximately seven months later. And then the second amendment complaint was filed pretty immediately a month later in January of 22. And during that entire time, it was really an issue of we have these motions to dismiss pending. And with all due respect to my previous counsel, I think, you know, he was focused on getting the pleadings to where he wanted them. And the written discovery was done, but he never- No, he did not ever subpoena records. He never brought up the issue of the privacy such that there could be a ruling based on the statutes and the law about what this child's privacy rights were and what the school could or could not disclose without consent and so forth. So- And I think the reason was that it was just pending in a motion to dismiss status pretty much from the very beginning. When the case was originally filed, the motion to dismiss was filed immediately. And then that whole time, basically, that it was pending, it was all about responding to the motions to dismiss and not just one of them. But because there were multiple amendments, the motion to dismiss was just hanging out there for a very long time. May I answer any other questions? Any other questions? Just briefly on the other, the issue about denial of leave to file, can you just briefly address that? The trial court considered the Loyola Academy factors, and where did the trial court err? Right. So the Perillo v. Maryville case, I believe, is instructive on the issue of the amendment. It is the First District case as opposed to Loyola, which is the Supreme Court case. But Loyola was decided in 1992, and it set forth the four factors. So to answer your question, plaintiff submits that even under the Loyola factors, under all four of those factors, the trial court was err in its analysis of every one of those four factors. But because the amended complaint that we were trying to file, the third amended complaint that we were trying to file, only had two issues. The negligence, we were seeking to bring back in the negligence counts, because when I came into the case, based on my research, I decided that there might be an ability to have negligence counts, for instance, against the school. On what grounds? On the, there are, there are several cases that talk about the fact that 2424 does not, first of all, 2424 only applies to negligence counts. The second amended complaint that was being decided by the, that was the motion to dismiss was attacking the second amended complaint. That second amended complaint only had willful and wanton counts in there. Immunity should not have even been an issue. But going back to your question about the four Loyola factors, so even under a Loyola standard, even though, you know, we were approximately 16 months out from the original filing, until the time the motion, until the time I was trying to file the third amended complaint, it was 16 months. And the, there's, so there's the case law that talks about the fact that the negligence against the schools is not immune. It only, it only is immunity. When it is based upon the conduct of an employee. It is. This vicarious immunity applies to the school. Correct. Yes, but the. Is that correct? Well, for vicarious liability. But when you are alleging, and the second amended complaint had counts directly against the school, and also had respondent superior or the various liability counts. And so. But both those counts would have had to be based upon the conduct or the actions of school employees. Well, it's an interesting situation because the case law has basically. The Supreme Court said. Split that hair. District is unable to benefit from immunity granted by section 2424 and 3484 under any circumstances. And then it goes on and talks about. It does apply when the conduct or the action is based upon conduct of an employee. Right. But I think there are multiple allegations in the second amended complaint that are set up. And they are not only. Allegations against the school for the vicarious liability of Jordan. But the first allegations are related to supervisory. Alleged supervisory duties or discretionary duties related to how to treat the student. Or how to treat the school within the context of allegedly needing to warrant. So isn't it? Wouldn't it be fair to say that the Supreme Court cases that split that hair. They're really the most. I call them premises liability cases. I think that the hair that was split on the. OK, so Kowalinski and children that were consolidated in the Supreme Court rule. Basically, that issues of supervision, discipline and care of the child. Which are essentially mirroring what a parent. Right. How to protect the child within the context of the family. So. Exactly. But I think when we're talking. For example, Garrity. Is that the football helmet case? Garrity is the football helmet case. Yes. OK. And then there's a case where there's a rut in the playground. True? Yes. The rut in the playground, I believe, was the. No, not the mural. I think that was the Sidwell versus Grigsville case. And yes, in those cases. So the distinction that the court made in terms of the very vicarious liability. Going back to your honors question. Is that when the allegations were against the school district as a whole. And they did not arise specifically out of a supervisory or disciplinary issue. That a teacher carried out. Those cases talked about. Yes, the child falling on the playground in Sidwell is kind of a premises situation. But then Garrity was the situation for the ill-fitting football helmet. And so the court was analyzing and splitting that hair of. Is this a vicarious liability situation where a coach. Or a teacher specifically instructed a student. Or is this a situation where the school district as a whole failed in some way. And I would submit to you that even pursuant to the allegations of the second amendment complaint. That were at issue in this case. There are allegations in there that do not. Are not based solely on vicarious liability. And what happened in the actual classroom. There are situations. But they all relate to the treatment of the child. Whether the school should have warned. Whether the school should have moved the child. Whether the school should have. I mean they're along that line. I can pull it out. I've got a tab. I would submit. Excuse me. I would submit. It's hard to. I don't think analogous to the provision of equipment. That was faulty. And I would of course as the plaintiff split that hair. Because I think that there are things as a school district. Ann Jordahl is the director of the school. But she's not acting on her own behalf. When she makes decisions about moving the child to a more appropriate maturity level classroom. This was fourth through sixth graders. Because it was a Montessori school. So they were combined in the same classroom. And I think it's the school district's responsibility. And yes they are acting through their director. Because a school district can only act through people. But these decisions are decisions that should be made as a school district. Based on their policy. And their parameters. And their student evaluations. And those allegations that this child. That they didn't warn. They should have moved this child. They should have made appropriate accommodations for him. To be in a classroom that was more on his maturity level as a fourth grader. Your time is up. Okay. Just quickly. The allegations that you just made. Are promised on notice. That the school would have had notice. Yes. I mean. Exactly. Different kinds of notice. We have threat notices. Drawing notices. But we also have maturity level notices. Was this the appropriate classroom for this fourth grader to be in. Who maybe wasn't at the same maturity level as a fifth or sixth grader. Who was also in the classroom. And who he entered. Again. It would have to be specific notice as to that particular child. Right? Yes. I believe whether it was notice within the school. Or even outside of school. About any behavioral issues he had. Whether it might have been against other students. Or things that were happening at home. Or things that were happening outside of the classroom. I mean. We live in a climate where we have to very much take seriously. You know. Any behavioral issues of a child. And I think that's the school district's responsibility. To evaluate this child. And so it's not just plaintiff submits. It's not just an issue of notice of a particular threat. Or a particular drawing. It's really more about did this school have notice overall. That would be challenging the whole structure. Right? Of a Montessori school. Yes. It probably would be. Yes. Any other questions? Any questions? Thank you. You will have an opportunity for a reply. Okay. Thank you. Thank you. Good morning, Your Honor. Good morning. My name is Christy Singler. And I represent the affiliate defendants in this matter. I'll be brief so that I can address any questions to the court. I think some of the issues that arose in this case arose from the fact that counsel joined the case late. Admittedly, after she joined the case in October, we did absolutely put every effort forth to get discovery in and to get it in quickly. Upon filing a promotion in October of 2022, the court's order stated that we could get the notice witnesses deposition. Not notice witnesses. Not plural. A single witness. Meaning if she had a notice witness, that witness needed to be put forth. Because that would be critical to addressing the issues raised in the defendant's 2619 motion. Regarding the court's order setting parameters on the depositions of defendants' affiance, we do not believe that was an abuse of discretion. Admittedly, as soon as current counsel joined the case, we have always referred to the child in question as AB. She was not part of the case when briefs were filed or, say, complaints were filed, including that child's name. But that child is entitled to privacy. He has never been made a party in this case. We did take the deposition of his mother. And he certainly was never contacted, to my knowledge, to ask if he consented to the release of his records. Even in counsel's reply brief here, the statement is made that they want access to mental health records for AB without a viable basis for the school to allow access to such pertinent information. I raised at the time of the argument that, and I'll raise it now, this is no different than someone walking into my doctor's office and saying they want my file. I mean, you have to have a basis to have access to such critical information for a person, be it a minor or adult. Can I ask, let me ask you this question. Would you recognize or agree that a 2619A9 motion is not a substitute for summary judgment? I agree. And so in your 2619 motion, the motion to dismiss, that does not raise affirmative matter that avoids the legal effect to defeat plaintiff's claims, correct? I mean, isn't this more akin to a summary judgment motion? I do think notice raises a bar to their claim as a whole. As a whole? Yes. Because the absolute notice, I don't know where we go. And I always argue. In the pleading, I'm talking about the complaint, they allege that the school knew. Correct. So how can you defeat that in a 2619 motion? That's really a motion for summary judgment, isn't it? I presume, but I mean, I believe the purpose of this is. The Supreme Court said it's myth. Affirmative matter does not, quote, include evidence upon which a defendant expects to contest the ultimate fact stated in the complaint. And that's essentially what you do in your 2619 motion, correct? Correct. Do the defendants have standing to invoke the privacy rights of AB? I don't think they have the standing to invoke his privacy rights. I think they have standing to invoke the fact that disseminating personal information of AB would create liability for the defendants. Under the school code. Correct. And the School Records Act. Correct. But you guys, in your pleadings, you did not cite the school code or the School Records Act, correct? I agree. We say to general privacy concerns. Excuse me. On page 15 of your brief, you cite to HIPAA, and then rather than give a pin cite, you cite to numerous sections. It's 1320D all the way to 1329-8. This is a federal statute, so there's quite a bit to it. Was there a particular subsection that you wanted to direct us to, or just a general reference to HIPAA and have the court take a good, close look at this complex federal statute? Your Honor, I did not cite a particular section, and I probably should have. Thank you. I do think the mental health records and 504 education records of a student remain privileged. As we stand here, I don't believe counsel for plaintiff has cited any basis to access such records, nor were efforts made to obtain AB's consent to dissemination of the same. Furthermore, when the depositions were taken off defendant's affidavits, counsel was allowed to fully question them regarding prior notice of any threats against students, staff at the school. So I think the limitations raised by the court were appropriate. Additionally, in responding to a 2619 motion, plaintiff actually had more information than most people would typically have, and part of that was due to parameters put in place with COVID. For example, plaintiff had the benefit of having all defendants' written discovery responses. Additionally, plaintiff was deposed Ms. Pacala, Ms. Giordano, and Ms. Al Goretti. With regard to Ms. Al Goretti, plaintiff argues that her deposition is of no consequence because her statements were based on records that currently exist and not records that existed in 2012. How do you respond to that? It's true. I mean, the bottom line is the school can only access what they have now. Ms. Al Goretti's sole purpose was to say, you know, I've reviewed the e-mail access that I have for Deborah Pacala and Ann Giordano, and this is what I'm finding. There was an incident report that was produced. Correct. So assuming the incident report was produced, any information related to that should have been produced if it existed, correct? Correct, and the school produced the incident report. Correct. And was this a permanent record because it had to do with the AB's behavior, or was it a temporary record? My understanding – Under the Schools Records Act, permanent records are to be kept for 60 years. Correct. Was this a permanent or a temporary record? The incident report? Yes. I believe it was considered a permanent record. They still had access to it. But they did not believe this to be a disciplinary situation. Okay. That was my understanding based on Ms. Jordahl's deposition. There's no evidence that there was a report to local law enforcement or the state's attorneys? Correct. And I apologize, I misspoke when I said Ms. Jordahl. I meant Ms. Al Goretti. Essentially what we have here is an allegation that AB committed a third-party criminal act that the school is being sought to be held responsible for. And here we don't see a basis for that, and that's been consistently our argument. In addition to deposing Ms. Pakula, Ms. Jordahl, and Ms. Al Goretti, we also deposed Ms. Vorowitz, we deposed AB's mother, and we deposed the teacher that was in the classroom, Barbara Byers. She was actually in the room with the students at the time of the incident. One of the key allegations in plaintiff's complaint is that the room was unsupervised. Only in the briefs after the complaint was it that the level of supervision was not appropriate. The complaint itself states unsupervised. It states it over and over with the general allegations incorporated into each of the four counts. In terms of striking the affidavits of Ms. Vorowitz and Ms. Hook, even if you take Ms. Vorowitz's affidavit at face value and you don't restrict the statements contained therein, she simply didn't say what she needed to say. She is unable to testify that prior to the date of this occurrence, that she advised the school that AB posed a threat to other students. The only thing that we can be clear about is that she raised an issue of a picture in October of 2020. Counsel addressed the fact that there was a parent-teacher conference in October of 2020. To be clear, Ms. Jordahl was not present at that conference. She was informed about that conference. Deborah Pakula did conduct that conference. There's been no debate about that. However, the only issues raised were a picture of a nine-year-old boy. And to date, one of the interesting things raised in Ms. Hook's affidavit is she attested to the fact that she was at Ann Vorowitz's home and saw a file folder containing the picture and other communications with the school. Ann Vorowitz testified that she never saw a photo, or the picture, the drawing. She never had it. So it's hard to imagine that Ms. Hook could actually see it at her home, you know, six weeks after the fact. In turning to the court's denial of plaintiff's plea to amend, again, some of this may be information that counsel is unaware of because she wasn't involved in the case. I filed a 2615 and a 2619 motion initially. My 2615 motion was denied by the court. Counsel for Mr. Hook acquiesced and said the issues I raised regarding the direct negligence count against the school, the cases were directly on point and he could not overcome that case law. On that basis, he was given leave to amend. That is why I deemed that count to be fully litigated. In terms of the Family Expense Act claim, timing is important in this case. Counsel filed their response to our motion to dismiss on 11-17 and then moved to court on 11-18 for leave to file the third amendment. If counsel had been seeking leave to file a third amendment, I would suggest that perhaps it should have been done in unison or perhaps the motion for leave to amend should have been done first so that the court could address that issue. In terms of the Family Expense Act claim, if the claim is dead in the hands of the parents, the claim in TimeGuard, that claim is also dead in the hands of the child. Mr. Hook filed his complaint four days prior to his 20th birthday. The assignment was never raised until the proposed third amendment complaint in November of 2022. Now, please keep in mind we have affidavits from Mr. Hook. Ms. Hook, at no point in time was an assignment even mentioned. In terms of the trial, so I believe the trial court was correct according to the Loyola factors in denying plaintiff leave to amend. Regarding the affidavits of both Shelly Hook and Ann Forowitz, Ms. Forowitz simply could not provide the appropriate information to provide notice. We moved to strike Paragraph 9 being the most important paragraph based on the attached papers provision and hearsay. Most importantly, in Ms. Forowitz's affidavit, she states, I cannot recall the particulars of conversations or communications. She could not provide the needed testimony to state, I know I told the school. She had no personal knowledge that prior to this incident, she had informed the school that she deemed AB to pose a fiscal threat to other students. The only thing she was secure in stating was that she had raised the issue of a drive. And I understand the drive may have contained things that someone would deem inappropriate. You're talking about a nine-year-old boy. Furthermore, no one has actually seen or produced the drive. Lower your microphone a little bit. Thank you. Judge Ortiz also stated that even if the affidavits were allowed to stand, they simply weren't enough to overcome the defendant's motion to dismiss. We believe the trial court correctly dismissed plaintiff's complaint who had asked this court to affirm that finding. I think the strongest issue in this case is notice. Immunity is also a key issue. To clarify, at no point in time did a defendant ever claim that any section other than 2424 applied to them. There's simply no basis to find that the defendants acted with a reckless disregard for AB's safety based on the evidence we know to date in this case. I certainly understand, you know, the difference between a motion for summary judgment and a 619. Here, we were able to get a lot of discovery. Plaintiff was given ample opportunity to provide any individual that could attest to the fact that or testify to the fact that the school was on notice or that the school failed to properly supervise AB. As we stand today, they have been unable to produce such a person. It's unusual on a 619 to have taken, you know, six to seven depositions, but we did. And frankly, I did not try to limit any depositions that we wanted to get in in order to ensure that plaintiff had opportunity, that if there was a notice witness, we were able to get that person in. I believe Ann Forowoods was who they thought would act as their notice witness, and she simply was unable to provide the testimony that they needed to overcome the arguments raised. May I ask, I think, and if I'm wrong in the record, then I apologize, but paragraph nine was struck of Ms. Forowoods' affidavit based on hearsay. Did seven stand? I believe. Let me check. If it becomes difficult to look, I'll check. Seven is where she averts. On October 20, I met with Ms. Pacula at the parent-teacher conference, talked about the drawing with body parts and a gun, and requested she look at it. If that's noticed, then is that hearsay? I guess I think having, attesting that a nine-year-old boy drew a picture of, you know, a gun and potentially a body part is not noticeably hearsay. But assuming it was, would it be hearsay? If Ms. Forowoods says, I told an agent of the school. May I please answer the question? Is that okay? Yes. Thank you. I believe Ms. Forowoods' testimony was clear. She did not recall ever telling the school that AV posed a threat. And so paragraph seven. Paragraph seven says, I told the teacher about the drawing. Correct. So let's just set aside whether it's a threat or not. But assuming that establishes a threat, would it be hearsay? I think it's a matter of opinion. So, yes, I think it's hearsay. I think it would require. I mean, I'm thinking notice to the agent is notice to the principal. If that's notice of an alleged danger, and I'm not ruling on that, then it follows that's not hearsay. I would agree. I think what I disagree is that I don't think a parent taking issue with a drawing of a student amounts to a presentation of a threat to the school. I understand that part. Thank you. Thank you for your time. Very much appreciated. Thank you. Thank you. Do you wish to reply? I do. I'm about to address their honors, but I'll try to answer a couple of specific questions. With respect to HIPAA, I believe I have this. You asked about the section numbers. I believe the section numbers, I mean, plaintiffs allege that it wouldn't even be protected by HIPAA because it doesn't fall under the parameters of HIPAA, this child's records, and that's putting aside the school records act. But with respect to HIPAA alone, which was one of the only things cited by counsel, by defendants, section I think 160.102 of 45 CSR addresses what covered entities are, and they include health plans, health care clearinghouses, and those health care providers that transmit health information electronically in connection with certain administrative and financial transactions. So I would submit that the school is not a covered entity. And then 45 CFR section 160.103 addresses what the definition of protected health information is, and I don't think the school records, so to speak, it's disciplinary records, behavioral records, that would qualify as protected health information. I think HIPAA was designated to address doctors' offices and hospitals, you know, revealing or producing actual health care records. So we would submit that HIPAA does not apply, and I believe those are the sections to direct you to. With respect to Your Honor's question, you know, and I didn't get to this in my argument, but it's absolutely worth noting that this was dismissed on a motion to dismiss at the pleading stage. This was not a summary judgment motion, and the court almost treated it like it was a summary judgment motion. The issue is, of course, is there a disputed question of fact, and the court — You didn't raise that objection at the trial level, at the trial court, treating it as a summary judgment motion or object to the affidavits or move to strike them. And you take issue with the affidavits, but you didn't move to strike them. So don't you waive any argument regarding the affidavits? No, Your Honor, because all I was — I don't think — I wasn't trying to strike their affidavits, nor did I ever want to strike their affidavits. I just wanted to question them on the statements in the affidavits because the statements, in my opinion, were just what they could find. It wasn't — they weren't statements of fact. This did not happen. This does not exist. They were only statements saying we looked and we can't find. But the issue about looking and not finding is that, A, it was so long ago, and, B, they didn't even find the e-mail that Ann Sorowicz sent the morning after that they acknowledged they received. And so to look for documentation and just say in an affidavit and have the court rely on an affidavit that we looked and we didn't find — Well, Jordahl and Pekala both, in their affidavits, said that they had no notice. Recollection. I believe they said they have no recollection. And during their depositions where it was more specifically questioned, they stood by the exact statements in their affidavits, which we have no recollection, but this is based on our memory. But both of them had left the school by then, right? Jordahl and Pekala both had. So they didn't have access to the affidavits. They didn't have access, but Allegretti did have access. And she said, we can't — we didn't find anything except that incident report. But they didn't even have the e-mail that everybody acknowledges existed and was sent the next morning. So — When you say the next morning — After the incident. Right. Again. The next morning. Would you agree that guesswork and speculation is not sufficient to raise an issue of material — a genuine issue of material fact? Guesswork and speculation is not. But Ann Florowick's statement was, even in the e-mail the next morning, was, I am reiterating my concerns. And as an English speaker with a bachelor's degree, she testified, when I say reiterate, I mean — This has been talked about before. And what she recalled talking about was not a physical threat that A.B. posed, correct? In her deposition. Right. She specifically remembered talking about the drawings at the parent-teacher conference and raising a concern about this child through his drawings. But, no, she admittedly did not say, I know 100 percent that I talked about this. Any other questions? Thank you. Any other questions? Thank you. Thank you both very much. We will be in recess until our next case and a written decision in due course.